**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JAMES A. STEMPEL,

                Plaintiff,

                v.

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

                Defendant.

No. 24 C 6077

Judge John F. Kness

**MEMORANDUM OPINION AND ORDER**

Plaintiff James A. Stempel seeks long-term disability benefits under a group plan issued by Defendant Unum Life Insurance Company of America to Plaintiff's former employer. Plaintiff contends that, after Defendant denied his claim for benefits, he filed a timely administrative appeal in January 2022. Defendant asserts that it did not receive that notice of appeal. After receiving a December 2023 letter containing the January 2022 appeal and a July 2022 follow-up letter (after the appeal window had closed), Defendant denied Plaintiff's appeal as untimely. Plaintiff then brought this action under the Employment Retirement Income Security Act (ERISA) Section 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)). Defendant seeks a judgment in its favor under Rule 52 of the Federal Rules of Civil Procedure and argues that Defendant failed to discharge his duty to exhaust administrative remedies before filing this ERISA suit.

Defendant is entitled to a judgment in its favor. As explained below, exhaustion of administrative remedies before filing suit is required both by the relevant benefits plan and strong federal policy. But Plaintiff cannot prove that Defendant received any notice of appeal. Plaintiff's attempt to rely upon the mailbox rule to prove exhaustion similarly fails, because the evidence of mailing that Plaintiff cites is neither credible nor sufficient to establish the mailbox presumption. And even if the mailbox presumption might otherwise apply, it is defeated both by Plaintiff's error in addressing the January 2022 letter and Defendant's robust evidence of nonreceipt. Defendant's motion for judgment must therefore be granted.

## I. BACKGROUND

On May 14, 2021, Plaintiff, a former lawyer, filed a claim for long-term disability ("LTD") benefits under a group LTD plan Defendant issued to Plaintiff's former employer, Kirkland & Ellis LLP (the plan became effective on January 1, 2020). (Dkt. 33-2 at 133–60; Dkt. 33-1.) Defendant confirmed receipt of this claim. (Dkt. 33-2 at 22.) On August 5, 2021, Plaintiff received a letter addressed to his home in Highland Park, Illinois, denying his LTD claim. (*Id.* at 191–97.) This letter included instructions for how to appeal and informed Plaintiff that, should he file an appeal, he would receive a confirmation of receipt from Defendant's appeals team. (*Id.* at 195–96.)

Plaintiff contends that he began drafting an appeal letter in or around March 2021, sent that letter on January 12, 2022, and then sent a follow-up letter on July 16, 2022. (*Id.* at 45–46, 51–52.) Plaintiff offered no witnesses to confirm the January

and July 2022 mailings and failed to provide electronic copies of either letter. (*Id.* at 59, 60, 63, 80–81, 93–94.) Plaintiff also provided inconsistent testimony about the laptops on which he allegedly drafted these letters. (*Id.* at 21, 75.) Plaintiff furnished a copy of the envelope that he allegedly mailed the January 2022 letter in, but the envelope is incorrectly addressed, is devoid of postage, and bears no postmark. (Dkt. 33-2 at 223; Dkt. 33-3 at 11, 45.)

Defendant denies receipt of the January and July 2022 letters. (Dkt. 34 at 4.) Defendant's mail room supervisor testified that, in 2022, Defendant followed a strict protocol for receiving, sorting, and storing mail and conducted multiple quality control checks. (Dkt. 33-3 at 12–15, 45–46.) Defendant maintains digital records of all mail received for at least seven years. (*Id.* at 46.) Defendant's mail room supervisor also testified that a thorough search was conducted through Defendant's digital records and at its mail provider's physical facility, but neither the January nor the July 2022 letter was found. (*Id.* at 17, 47.)

On December 30, 2023, Plaintiff sent Defendant a letter by Priority mail and enclosed copies of the alleged January and July 2022 letters. (Dkt. 33-2 at 198–216.) Defendant received this letter and responded with a letter dated January 5, 2024, informing Plaintiff that it did not receive the 2022 letters and that the deadline for filing his appeal had expired. (*Id.* at 217–18.) This suit followed on July 18, 2024. (Dkt. 1.)

Neither party requested a jury trial. (Dkt. 11 at 3.) Following limited discovery on the exhaustion issue, the parties jointly agreed, under Rule 52 of the Federal Rules

of Civil Procedure, to submit that issue for decision on the existing record; both sides then filed cross-motions requesting that relief.[1] (Dkt. 34.)

## II.    LEGAL STANDARD

As it is limited to the exhaustion issue, Defendant's motion is best construed as a Rule 52(c) motion. Rule 52(c) of the Federal Rules of Civil Procedure, added in 1991, allows the court to enter judgment on a specific issue within a case. Fed. R. Civ. P. 52(c) advisory committee's note to 1991 amendment. Rule 52(c) replaces part of the former Rule 41(b). *Id.* Case law that developed under Rule 41(b) is also applicable under Rule 52(c). *See Gaffney v. Riverboat Servs. of Indiana, Inc.*, 451 F.3d 424, 451 n.29 (7th Cir. 2006). Because the motion is decided at an interim stage, denial of a party's motion under this rule "amounts to nothing more than a refusal to enter judgment at that time." *Armour Rsch. Found. of Illinois Inst. of Tech. v. Chi., R. I. & P. R. Co.*, 311 F.2d 493, 494 (7th Cir. 1963) (discussing a motion under Rule 41(b)).

When ruling on a Rule 52(c) motion, a trial court acts as "a finder of fact, weighing evidence and assessing the credibility of the witnesses." *Pinkston v. Madry*, 440 F.3d 879, 890 (7th Cir. 2006); *see also Stop Ill. Health Care Fraud, LLC v. Sayeed*, 957 F.3d 743, 748 (7th Cir. 2020) (citing *Wilborn v. Ealey*, 881 F.3d 998, 1008 (7th Cir. 2018)). A judgment under Rule 52(c) "must be supported by findings of fact and conclusions of law as required by Rule 52(a)." Fed. R. Civ. P. 52(c). These factual

---

[1] This choice to submit the exhaustion issue for decision on the existing record aligns with Rule 52. As the Seventh Circuit has recognized in other ERISA cases, a district court may conduct what is "essentially a trial on the papers" under Rule 52 when resolving factual issues based on a closed documentary record. *Fontaine v. Metro. Life Ins. Co.*, 800 F.3d 883, 885 (7th Cir. 2015).

findings and conclusions of law should be stated separately. Fed. R. Civ. P. 52(a)(1). In a written opinion, such separation can be achieved by distinct headings. *Safeway Stores, Inc. v. Safeway Quality Foods, Inc.*, 433 F.2d 99, 102 (7th Cir. 1970). A court must also make any subsidiary findings that are necessary to support the steps by which it reached its conclusion. *Dearborn Nat. Cas. Co. v. Consumers Petroleum Co.*, 164 F.2d 332, 333 (7th Cir. 1947). This is, however, only required for "the ultimate fact issues." *Gay Games v. Smith*, 132 F.2d 930, 932 (7th Cir. 1943).

## III.   DISCUSSION

The parties' disagreement boils down to two issues: first, whether exhaustion is a prerequisite to this Court's review of ERISA actions, and second, whether Plaintiff has established exhaustion.

### A.   Exhaustion

For the reasons set forth below, the LTD plan (when defined correctly) requires exhaustion. And even though courts have discretion to suspend the exhaustion requirement, exercising that discretion here would be inappropriate given the strong federal policy in favor of requiring administrative exhaustion. These issues are addressed in turn following a summary of pertinent factual findings.

#### 1.   *Findings of Fact*

Both parties jointly submitted the "Group Policy" for consideration. (Dkt. 33-1.) Although Plaintiff does not dispute that Dkt. 33-1 constitutes the "Group Policy," he disputes that one of the sections entitled "Additional Summary Plan Description" is part of the binding LTD plan. (Dkt. 38 ¶ 1; Dkt. 42 ¶¶ 1–2.)

The parties use different terminology to refer to the document beginning on page 47 of Dkt. 33-1 (titled "Additional Summary Plan Description Information"). Plaintiff refers to it as the Summary Plan Description, while Defendant refers to it as the "ERISA pages." (Dkt. 36 at 9; Dkt. 43 at 3.) This disagreement is immaterial; for the sake of simplicity, the document can be referred to as the summary plan description—a term that appears in precedent. *See, e.g.*, *Aschermann v. Aetna Life Ins. Co.*, 689 F.3d 726, 728–29 (7th Cir. 2012).

By its own terms, the summary plan description is incorporated into the plan. (Dkt. 33-1 at 47) ("These provisions, together with your certificate of coverage, constitute the summary plan description. The summary plan description and the policy constitute the Plan.") The express terms of the summary plan description require exhaustion: it states that "[u]nless there are special circumstances, this administrative appeal process must be completed before you begin any legal action regarding your claim." (Dkt 33-1 at 51.)

### 2. Conclusions of Law

A summary plan description is typically not included in the plan and, if separate from the plan, is not legally binding. *CIGNA Corp. v. Amara*, 563 U.S. 421, 437 (2011). A summary plan description (SPD) can, however, be incorporated into the plan itself even when, as here, "the language of incorporation appears only in the SPDs themselves." *Li v. First Unum Life Ins. Co.*, No. 23CV6985 (DLC), 2025 WL 326492, at *12 (S.D.N.Y. Jan. 29, 2025) (citing *Aschermann v. Aetna Life Ins. Co.*, 689 F.3d 726, 729 (7th Cir. 2012) ("There is no reason why an employer cannot make a

summary plan description be part of the plan itself.")), *aff'd*, No. 25-411-CV, 2026 WL 112655 (2d Cir. Jan. 15, 2026). Indeed, courts have found that the terms of a summary plan description that is explicitly incorporated into the plan are enforceable. *Tetreault v. Reliance Standard Life Ins. Co.*, 769 F.3d 49, 56 (1st Cir. 2014) ("[E]very court that has considered the issue has held that *Amara* poses no automatic bar to a written instrument's express incorporation of terms contained in a summary plan description."); *see also Shyman v. Unum Life Ins. Co.*, 427 F.3d 452, 455 (7th Cir. 2005) ("A clause that not only represents the plan sponsor's decision but also communicates the rules to the participants and beneficiaries is enforceable under ERISA"). Because the summary plan description is, by its own terms, incorporated into the plan, the plan requires exhaustion.[2]

District courts have discretion to require or waive exhaustion as a prerequisite to suit under ERISA. *Orr v. Assurant Emp. Benefits*, 786 F.3d 596, 601–02 (7th Cir. 2015). Strong federal policy, however, favors exhaustion. *Kross v. W. Elec. Co.*, 701 F.2d 1238, 1244 (7th Cir. 1983). As the Seventh Circuit has recognized, "Congress established the administrative claims resolution process to 'reduce the number of frivolous law-suits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the cost of claims settlement for all concerned.' " *Schorsch v. Reliance Standard Life*

---

[2] This finding is further bolstered by Plaintiff's admission that the summary plan description is part of the "Group Policy." (Dkt. 37 ¶¶ 1–2; Dkt. 38 ¶ 1.) But even apart from that admission, a policy can encompass a summary plan description when the document itself uses words of incorporation. *Li*, 2025 WL 326492, at *12 (citing *Aschermann*, 689 F.3d at 729).

*Ins. Co.*, 693 F.3d 734, 739 (7th Cir. 2012) (quoting *Kross*, 701 F.2d at 1244–45).

Although courts have discretion vis-à-vis administrative exhaustion, they should be hesitant to exercise that discretion in contradiction of a plan's terms. *See Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013) (quoting *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1548 (2013) ("The principle that contractual limitations provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA plan. 'The plan, in short, is at the center of ERISA.' ")). Where the plan expressly requires exhaustion, as it does here, courts should favor that requirement. And even if the plan did not require exhaustion, the requirement should be honored because of the strong federal policy in favor of exhaustion.

There are two recognized exceptions to the exhaustion requirement: where there is "a lack of meaningful access to review procedures, or where pursuing internal plan remedies would be futile." *Schorsch*, 693 F.3d at 739 (quoting *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 361 (7th Cir. 2011)). Plaintiff has not argued that these exceptions apply.[3] But even if he had, neither exception is warranted.

A lack of meaningful access exists when a plaintiff is not made aware that a review procedure is available or when a plaintiff attempts to initiate higher levels of review but is denied access. *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 402–03 (7th Cir. 1996). Plaintiff was given explicit instructions regarding the review

---

[3] Plaintiff's failure to develop the applicability of any exceptions to exhaustion constitutes waiver (or at least forfeiture of the argument). *Thompson v. Boggs*, 33 F.3d 847, 854 (7th Cir. 1994).

8

process, but he failed to use that process in a timely way to initiate a higher level of review. (Dkt. 33-2 at 195–96, 217.) Put simply, Plaintiff had meaningful access to Defendant's appeal process.

Nor is there evidence that Defendant's internal plan appeal process would be futile. To satisfy the futility exception to the exhaustion requirement, a plaintiff "must show that 'it is certain that her claim will be denied on appeal, not merely that [she] doubts that an appeal will result in a different decision.'" *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1238 (7th Cir. 1997) (quoting *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996)). Nothing in the record of this case suggests that Plaintiff's appeal would certainly have been denied.

Plaintiff has not suggested that a recognized exception to the exhaustion requirement is present here. Nor does the record support such a finding. As a result, Plaintiff is required to show that he exhausted his available administrative remedies.

### B.     Plaintiff Has Not Established Exhaustion

To establish exhaustion, Plaintiff must show that he filed a timely appeal. Plaintiff contends that he did so, pointing to an appeal letter that he allegedly sent in January 2022 and a follow-up letter that he contends was sent in July 2022. (Dkt. 36 at 3; Dkt. 33-2 at 198.) Defendant denies receipt of both letters. (Dkt. 34 at 9–10; Dkt. 43 at 9–12.) This issue thus boils down to the mailbox rule, a federal common law presumption that mail properly sent is received. *See Hagner v. United States*, 285 U.S. 427, 430 (1932).

As explained below, because there is insufficient evidence that the purported

9

appeal letters were properly directed and mailed in January 2022 and July 2022, Plaintiff fails to show that the mailbox presumption applies. But even if it did, Defendant provides robust evidence of nonreceipt that suffices to rebut the presumption.

### 1.    *Findings of Fact*

Plaintiff presents no witnesses to support the assertion that he sent the January and July 2022 letters; his primary evidence is his testimony. (Dkt. 33-2 at 59, 63.) But that testimony is of dubious persuasiveness. Plaintiff testified that he began drafting the January 2022 letter in or around March 2021. (*Id.* at 51–52.) Although it is certainly possible that a person could write an appeal letter over a long period, and might begin gathering evidence even earlier, Plaintiff did not file his original claim until May 14, 2021. (*Id.* at 133–60.) This means that Plaintiff began drafting his appeal letter before filing his original claim: an unlikely circumstance.

More questionable is Plaintiff's failure to provide electronic copies of the January 2022 and July 2022 letters. Plaintiff is a former partner in a highly successful corporate restructuring practice. (*Id.* at 9.) Plaintiff's experience suggests that, if events transpired as he asserts they did, he would have exhibited a level of sophistication of execution beyond what he exhibited here. It can be assumed that Plaintiff was aware of the importance of maintaining orderly records. As Defendant points out, producing electronic copies of the documents "could only help Plaintiff's position—unless metadata would confirm that he did not draft the January and July 2022 letters when he says he did." (Dkt. 43 at 7.)

Plaintiff attempts to explain his failure to produce one of the letters (the January 2022 appeal) by asserting that he recycled the computer that it was stored on. (Dkt. 33-2 at 75.) Early in his deposition, Plaintiff testified that he had three laptops in his possession. (*Id.* at 21.) But almost immediately after, he expressed uncertainty about whether he still had the third. (*Id.*) Later in his deposition, Plaintiff appeared confident that he had recycled the same laptop. (*Id.* at 75.) Given Plaintiff's earlier statement that the laptop may still be in his possession, Plaintiff's assertion that this electronic copy is lost remains uncertain. But even if Plaintiff did recycle the laptop that contained a digital copy, Plaintiff admitted he typically emails to himself printed documents "to keep [them]." (Dkt. 33-2 at 79.) Yet Plaintiff offers no credible explanation for why he failed to produce a digital copy of the 2022 letters. (*Id.* at 47–49.)

By the same token, Plaintiff does not offer a paper trail for his mailing despite its importance to his claim. Plaintiff sent neither his original appeal (the January 2022 letter) nor his follow-up (in July 2022) by Priority mail or any other method for which delivery tracking was available. (Dkt. 33-2 at 58, 61.) Regular First-Class mail cannot be tracked, confirmed as sent, or confirmed as delivered.[4] And although the mailbox rule does not require the use of Priority mail or an analogue, and it is true that Plaintiff was entitled to choose First-Class mail, the importance of the letters, combined with Plaintiff's employment experiences, make it less credible that Plaintiff

---

[4] Judicial notice of the distinctions between First-Class mail and Priority mail is appropriate. *See* Mail & Shipping Services, USPS.com, https://www.usps.com/ship/mail-shipping-services.htm (last visited Aug. 3, 2026).

11

chose to employ only First-Class mail. Plaintiff recognized as much when he sent his third letter via Priority mail. That letter (the only one that was delivered) is also the only one for which a credible record exists showing that it was sent. (*Id.* at 216.)

A party with Plaintiff's level of sophistication and experience almost certainly would have chosen to send the second letter (in July 2022) by means that would have permitted delivery confirmation. By that point, Plaintiff was on notice that there was something amiss with the delivery of his first appeal letter. Plaintiff knew that Defendant sends letters acknowledging receipt of correspondence: he had received confirmation of receipt of his initial claim from Defendant and his claim denial letter explicitly promised that Defendant's appeals unit would send a letter acknowledging receipt of his appeal. (Dkt. 33-2 at 22, 196.) Plaintiff received no confirmation of his January 2022 letter. (*Id.* at 59.) By July, Plaintiff had to have known that his alleged January 2022 mailing was unsuccessful. Yet Plaintiff still has provided no evidence of his second mailing.

Although Plaintiff furnished a copy of the envelope that he purportedly mailed the January 2022 letter in, the envelope was unstamped, bore no postmark, and was incorrectly addressed. (Dkt. 33-2 at 223, 340.) It does not establish the date that it was mailed, and in fact, whether it was mailed at all. And Plaintiff's testimony on the point, even when paired with this weak physical evidence, is not credible. Plaintiff's equivocations regarding the drafting of the letters and their storage, when combined with the concrete evidence of his use of Priority mail for other important mailings (*id.* at 42, 216), suggest that Plaintiff's testimony regarding the purported January 2022

12

and July 2022 letters is not believable. Plaintiff's evidence thus does not constitute credible evidence of mailing.

In contrast, Defendant has provided credible testimony from its mail room supervisor that Defendant never received the letters. This testimony describes in detail Defendant's procedures for receiving, sorting, and storing mail. (Dkt. 33-3 at 12–15, 45–46.) It also establishes that these procedures were followed in 2022. (*Id.* at 12.) In addition, Defendant's mailroom supervisor testified that a search was conducted in both Defendant's digital records and the mail provider's physical facility. (*Id.* at 17, 47.) Defendant's digital records are maintained for at least seven years. (*Id.* at 46.) Although Defendant's mailroom supervisor could not rule out any mistakes "with a hundred percent certainty," Defendant's mailroom operates at a 99.9% accuracy rate. (*Id.* at 15, 19.)

As the record shows, errors do occur in Defendant's mailroom. Mail from different senders, for example, can sometimes be scanned together. (Dkt. 33-3 at 13.) Defendant, however, has multiple mechanisms in place to catch and remedy these errors. In the mailroom, each scanned document is checked and audits are regularly conducted. (*Id.* at 13–14, 15.) After a document is added to a file, claims examiners also review the document to ensure that it pertains to the claimant. (*Id.* at 46.) This evidence is sufficient to show that, had the letters been received, they almost certainly would have been discovered in Defendant's digital records. As such, the Court finds that Defendant never received the January and July 2022 letters.

13

## 2. Conclusions of Law

Under the mailbox rule, it is settled that "proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." *Hagner*, 285 U.S. at 430 (citing *Rosenthal v. Walker*, 111 U. S. 185, 193 (1884)). To avail himself of the mailbox rule, Plaintiff first must establish that he mailed the 2022 letters. Testimony of the person who mailed a letter is generally accepted as evidence of actual mailing. *Newline Holdings, LLC v. Scott*, No. 21-CV-6346, 2022 WL 17251282, at *7 (N.D. Ill. Nov. 28, 2022). Acting as a finder of fact on this Rule 52(c) motion, the court must weigh this evidence and assess its credibility. *Pinkston*, 440 F.3d at 890. Having determined that Plaintiff's testimony regarding the mailing is not credible, the Court finds that the mailbox presumption is not established.

Moreover, the mailbox rule typically only applies to letters that are "properly directed." *Hagner*, 285 U.S. at 430. Even when the mailbox presumption is established through reliable evidence that a letter is placed in the post office, this presumption is weakened by errors in address. *In re Longardner & Assocs., Inc.*, 855 F.2d 455, 460 (7th Cir. 1988). As explained above, Plaintiff has failed to provide credible evidence that his letters were placed in the post office. Even if he had done so (and established the mailbox presumption), the mailbox presumption would be weakened by his error in address.

Although Plaintiff points out that the mailbox presumption may be

14

strengthened if a letter is never returned to the sender (Dkt. 36 at 5),[5] this should only be dispositive when it is established that a letter was sent. *See In re Longardner & Assocs.*, 855 F.2d at 459–60. Plaintiff could have received returned mail only if he sent the letters in the first place. Nothing in the record suggests that he did so.

Conversely, Defendant has provided sufficient evidence to rebut the mailbox presumption. *Cf. Vincent v. City Colleges of Chicago*, 485 F.3d 919, 923 (7th Cir. 2007) ("The trier of fact determines whether the presumption of delivery has been overcome."). In *Newline Holdings v. Scott*, the court found that a party "rebutted [the presumption of delivery] by submitting an affidavit attesting that he did not receive" the mailing in question. 2022 WL 17251282, at *7. For the reasons above, the Court has found that Defendant did not receive the January 2022 and July 2022 letters. This fact effectively and conclusively rebuts the mailbox presumption.[6]

---

[5] Although the letters were never returned to the sender, and even assuming the letters were sent, Plaintiff should have been on notice that his appeal mailings were never received: Plaintiff received confirmation of receipt of his May 14, 2021 claim by email and letter, yet he received no such notice for his appeal mailings. (Dkt. 35 ¶¶ 6, 18.) Instead, Plaintiff let the appeal deadline pass without any further inquiry, even though Plaintiff previously had called Defendant when he had issues. (*Id.* ¶ 10.)

[6] In *Schikore v. Bank America Supplemental Retirement Plan*, the Ninth Circuit set out a more demanding test to rebut the mailbox presumption. 269 F.3d 956, 964 (9th Cir. 2001). That test, which is not binding in this Circuit, has been criticized as too demanding. *Nixon v. Arrow Fin. Servs.*, No. 02 C 3431, 2003 WL 22427765, at *3 (N.D. Ill. Oct. 21, 2003) (Courts should not "demand too much lest the rebuttable presumption be converted into an irrebuttable one."); *Barrs v. Lockheed Martin Corp.*, 287 F.3d 202, 211 (1st Cir. 2002). Even under that more demanding test, however, Defendant's evidence of nonreceipt rebuts the mailbox presumption. *Schikore* requires a party to "describe in detail its procedures for receiving, sorting, and distributing mail, . . . show that these procedures were properly followed at the time when the document in question might conceivably have been delivered by the postal service, . . . provide evidence that it has conducted a thorough search for the document at the addressee's physical facility, and . . . establish that[,] had the document been received around the time the claimant asserted it was mailed, it would presently be at the location searched by the Plan Administrator." *Schikore*, 269 F.3d at 964. Plaintiff has done so, although in a digital (rather than physical) format, as Defendant retains digital records

In sum, Plaintiff cannot show that he pursued an appeal in a timely fashion. As a result, Plaintiff has not exhausted his administrative remedies. Judgment is therefore granted in favor of Defendant.

## IV. CONCLUSION

Defendant's motion for judgment is granted.

SO ORDERED in No. 24 C 6077.

Date: August 4, 2026

_____
JOHN F. KNESS
United States District Judge

---

for much longer than physical records. (Dkt. 33-3 at 12–15, 17, 45–47.) Even if the Ninth Circuit's more demanding analysis applied here, therefore, Defendant has successfully rebutted the mailbox presumption with evidence of nonreceipt.